D. Maimon Kirschenbaum
JOSEPH KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Named Plaintiff, proposed FLSA Collective Plaintiffs, and proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
**NASER DERVISEVIC, on behalf of himself and others similarly situated,**

              **Plaintiff,**

              **v.**

**WOLFGANG'S STEAKHOUSE, INC. and WOLFGANG ZWIENER, REX FERATOVIC, ZIJO MUSIC, PETER ZWIENER, and STEVEN ZWIENER,**
              **Defendants.**
----------------------------------------------------------x

**INDEX NO.**

**COMPLAINT**

**FLSA COLLECTIVE ACTION AND RULE 23 CLASS ACTION**

Plaintiff Naser Dervisevic allege as follows:

### JURISDICTION AND VENUE

1. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

3. Defendant Wolfgang's Steakhouse, Inc. is a New York Corporation that owns and operates Wolfgang's Steakhouse located at 4 Park Avenue, New York, NY 10016 ("Defendant Wolfgang's" or the "Restaurant").

4. Defendant Wolfgang's has an annual gross volume of sales in excess of $500,000.

5. Defendant Wolfgang's is owned, and its operations are conducted, by Defendants Wolfgang Zwiener ("Defendant Wolfgang Zwiener"), Rex Feratovic ("Defendant Feratovic"), Zijo Music ("Defendant Music"), Peter Zwiener ("Defendant Peter Zwiener"), and Steven Zwiener ("Defendant Steven Zwiener") (collectively, "Defendant Owners").

6. The Defendant Owners have actual ultimate authority with respect to hiring and firing decisions, discipline, and payroll practices at the Restaurant.

7. The Restaurant and Defendant Owners are hereafter referred to as the "Defendants."

8. Plaintiff Naser Dervisevic ("Plaintiff Dervisevic") has been employed by Defendants as a waiter since 2006.

## FLSA COLLECTIVE ACTION ALLEGATIONS

9. Plaintiff brings the First and Second Claims for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all service employees, not including service managers, employed by Defendants on or after the date that is three years before the filing of this Complaint ("FLSA Collective").

10. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies,

programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them for all hours worked and willfully failing and refusing to pay the legally required overtime wage for all hours worked over forty (40) hours in a workweek. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

11. The First and Second Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS – NEW YORK**

12. Plaintiff brings the state law Third, Fourth, and Fifth and Sixth Claims for Relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all service employees, other than service managers, employed by Defendants on or after the date that is six years before the filing of this Complaint (the "Class Period").

13. All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from Defendants' records. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P. 23.

14. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) members of the Class.

15. Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay overtime, and failing to provide Class members with required wage notices. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

16. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

17. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against Defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

18. Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

19. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members, including:

a) Whether Defendants employed Plaintiff and the Class members within the meaning of the New York law.

b) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class members for their work.

c) The policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class members at all.

d) Whether Defendants paid Plaintiff and the Class members the appropriate minimum wage for all hours worked.

e) Whether Defendants paid Plaintiff and the Class members the appropriate overtime wage for all overtime hours worked.

f) Whether Defendants gave Plaintiff and the Class members the wage statements and notice required by New York Labor Law § 195 and the New York Hospitality Wage Order.

## FACTS

### Wage and Hour Claims

20. Plaintiff's consent to sue form is attached hereto as Exhibit A.

21. Plaintiff was paid an hourly rate that is lower than the New York State minimum wage during his employment by Defendants.

22. Plaintiff was in fact paid a "tip credit" minimum wage under the FLSA and NYLL.

23. Defendants were not entitled to utilize the tip credits set forth under the FLSA and New York Labor Law because they did not give Plaintiff the appropriate notice of the tip credit, including but not limited to the notices required by N.Y. Lab. Law § 195.

24. N.Y. Lab. Law § 195 also requires an employer's weekly wage statement to set forth any allowances being applied to Plaintiff's pay. However, Plaintiff's weekly pay stubs failed to set forth accurately the tip credit being applied to Plaintiff's wage.

25. Defendants were not entitled to pay Plaintiff under the lower minimum wage applicable to food service workers because they did not notify him in writing at the beginning of his employment and at the beginning of each year that the minimum wage changed: (a) explaining the full minimum wage, and (b) explaining that they intended to take a specific tip credit as required under NYLL § 195(1).

26. In addition, Defendants were not entitled to pay Plaintiff the tip credit minimum wage for the many shifts during which Plaintiff spent more than 20% of his time performing non-tipped side-work.

27. Until approximately one year ago, Plaintiff typically worked five to seven shifts a week, which included two double shifts and three dinner shifts. When working a lunch shift, Plaintiff was required to arrive at work at 10:30 a.m., an hour and a half before the Restaurant opened to customers at noon, and generally clocked out at 2:30 p.m. During this time Plaintiff and other servers were responsible for setting up the dining room and doing side work. These tasks included cutting butter, preparing bread, bringing soda from downstairs, putting on tablecloths, preparing coffee, and salad preparation. Very often, Plaintiff comes in for a dinner shift at 5:00 p.m. and is told to do approximately 30 minutes of side work before serving tables.

Plaintiff was paid a tipped wage for all hours worked, including shifts during which he spent at least 20% of his shift on untipped duties.

28. In addition, Plaintiff and other servers were often required to work for an additional 30 minutes or more after clocking out at the end of a shift. For example, at the end of a lunch shift, Plaintiff would be pushed to clock out at approximately 2:30 p.m., but he would then be required to continue working until 3:00 p.m. or even 3:15 p.m. At the end of nearly every dinner shift, Plaintiff and other servers are pushed to clock out by 10:30 p.m. and then required to work until 11 p.m. The manager on duty told Plaintiff that they didn't have enough closing servers so Plaintiff would have to stay after clocking out.

29. Approximately one year ago, in response to severe and pervasive harassment, Plaintiff stopped working double shifts to reduce his stress. Plaintiff now generally works five shifts per week and is still required to perform untipped work at the beginning of his shifts and off-the-clock work at the end of his shifts.

30. Plaintiff, like many other employees at the Restaurant, feared losing his job and was afraid to complain about the off-the-clock work.

31. Because Defendants inappropriately availed themselves of the tip credits, Defendants also paid Plaintiff and other servers the wrong rate for overtime when Plaintiff worked more than 40 hours in a week.

32. In addition, Defendants did not pay Plaintiff the spread of hours compensation for shifts spanning 10 or more hours.

33. Defendants committed the foregoing acts willfully and against Plaintiff, the FLSA Collective Plaintiffs, and the Class.

## Ethnic, Religious, Sex and Age Discrimination Claims

34. Defendant Owners and Plaintiff are all Montenegrin; however, Defendant Owners are Bosnian and Plaintiff is an Albanian Muslim.

35. Defendant Owners made no secret of their dislike of Plaintiff because of his identity as an Albanian and harassed, abused and exploited him with a sense of total impunity.

36. For example, Defendant Feratovic, Defendant Music, and their relatives employed by Defendants frequently referred to Plaintiff as "the Albanian guy" in a derogatory tone and also called him "*shiptar*," a derogatory slang term for Albanians.

37. Defendant Owners also often singled out Plaintiff for criticism and reprimands while his Bosnian colleagues, many of whom are related to Defendants, got away with providing mediocre service without repercussion. Further, Defendants often assigned Plaintiff the most or even the majority of the tables in a given shift and paired him with the least experienced back waiters. This caused him to work much harder than the other waiters and often he had to compensate for the inexperience of his back waiters. Despite his extra effort, Defendants divided the tip pool evenly among the servers, regardless of whether Plaintiff's hard-earned tips far exceeded the amount brought in by other servers. As recently as December 30, 2018, Plaintiff was assigned 25 of the approximately 32 tables in the restaurant. At the same time, Defendants paired Plaintiff with an inexperienced back waiter, one of Defendant Owners' relatives, to assist him. Plaintiff served his customers and had to compensate for the back waiter's inexperience and refusal to do certain tasks. Plaintiff was reprimanded and his hard-earned tips from serving the majority of the tables were distributed evenly among the staff.

38. Plaintiff feared complaining about the discriminatory treatment because experience showed him that Defendants stood behind their Bosnian relatives and employees.

9

39. Plaintiff was often reprimanded in a public and humiliating way by Defendants and the Restaurant manager. For example, on or about November 14, 2018, Defendant Feratovic yelled at Plaintiff publicly about where Plaintiff was standing in the Restaurant. Customers could hear the interaction and Plaintiff was thoroughly embarrassed. On another occasion, on or about February 14, 2017, Defendant Music and his friend harassed Plaintiff at the bar in front of customers. They taunted him by stating loudly that the bar was poorly maintained, the wine was warm and by asking antagonistic questions. A regular customer seated at the bar later said to Plaintiff that he thought Defendant Music and his friend had "gone too far."

40. On or about November 14, 2018, Defendant Music's son, who works as a waiter at the bar, intentionally pushed Plaintiff in the dining area. Plaintiff did not report the physical harassment because he knew that Defendant Music's son, a Bosnian, had impunity and feared retaliation.

41. On or about November 17, 2018, the Restaurant manager on duty, Demush "Danny" Ahmetaj, yelled at Plaintiff for clearing dirty glasses – a responsibility that Defendant Owners and managers had often expressed to servers. The reprimand was so aggressive and violent that all of the customers nearby were staring. Plaintiff felt thoroughly humiliated.

42. Upon information and belief, Plaintiff is the oldest waiter in the Restaurant. On many occasions, Defendant Feratovic made comments about Plaintiff's age, saying he is too old for his job and too old to "get hard." Defendant Owners created an atmosphere where it was acceptable to harass Plaintiff, and other employees followed their lead. On several occasions, Defendant Music's son, a waiter at the Restaurant, told Plaintiff he should go home because he is too old for the job.

43. Plaintiff not only endured discriminatory treatment motivated by his ethnicity and his age, but also was sexually harassed at work. Defendants often taunted Plaintiff in ways that implied he was not "man" enough. Defendant Feratovic joked that Plaintiff was too old to "get hard," ie. perform sexually and also texted Plaintiff a video of hard-core pornography. Defendant Feratovic later asked Plaintiff if he received the pornographic video, coaxing Plaintiff for a response. On or about July 14, 2017, Defendant Music was dining in the Restaurant with two friends. Upon information and belief, his friends were both Bosnian. Defendant Music asked Plaintiff to serve them drinks even though their table was not his responsibility at the time. Plaintiff brought the group their drinks anyway and was rewarded with humiliation. The men began joking about a red stain on Plaintiff's shirt, and asked him if he had his menstrual period. Defendant Music later tried to convince Plaintiff that nothing was meant by the teasing and also told the manager on duty, Demush Ahmetaj, to defend the behavior.

44. Defendant also harassed Plaintiff because he is Muslim. For example, in or about October 2015, Defendants were ordering name tags for servers and staff to wear on their uniforms. Plaintiff requested that his name tag display his real name, "Naser." Plaintiff's nickname at work is Gianni, and Defendants required Plaintiff to wear his nickname on his uniform saying that they would lose customers if he wore his real, apparently Muslim, name. Upon information and belief, other waiters and staff are permitted to wear their real names on their uniforms. In or about October 2016, Plaintiff was discussing Donald Trump with a group of waiters. Defendant Feratovic heard the conversation and singled out Plaintiff, saying that he better not say anything about Mr. Trump because with his (obviously Muslim) name, he could get in trouble.

45. On another occasion, Plaintiff was reprimanded for wearing a soccer Jersey of the famous Muslim soccer player Zinedine Zidane. Defendant Feratovic ordered Plaintiff to immediately change his shirt.

46. The constant scrutiny, harassment, taunting and abuse have caused Plaintiff severe physical and emotional injury. On or about May 2, 2018, Plaintiff experienced severe chest pain and went to the emergency room. Plaintiff continues to have trouble sleeping, is now on several prescriptions for high blood pressure. Plaintiff recently took several days of leave because he feared the stress levels at work were going to cause him further physical harm.

**FIRST CLAIM FOR RELIEF**
**FLSA Minimum Wage Claims, 29 U.S.C. § 201, *et seq.*,**
**Brought by Plaintiff on Behalf of Himself and the FLSA Collective**
**Plaintiffs against the Defendants**

47. Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

48. At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed, "employee[s]," including Plaintiff and each of the FLSA Collective Plaintiffs.

49. Throughout the statute of limitations period covered by these claims, Defendants knowingly failed to pay Plaintiff the federal minimum wage for each hour worked.

50. Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, seeks damages in the amount of their respective unpaid compensation, liquidated (double) damages as provided by the FLSA for minimum wage violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**FLSA Overtime Violations, 29 U.S.C. § 207**
**Brought by Plaintiff on Behalf of Himself and the FLSA Collective**
**Plaintiff against the Defendants**

51.     Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

52.     At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.  At all relevant times, Defendants have employed, "employee[s]," including Plaintiff and each of the FLSA Collective Plaintiffs.

53.     Throughout the statute of limitations period covered by these claims, Plaintiff and the other FLSA Collective Plaintiffs worked in excess of forty (40) hours per workweek.

54.     At all relevant times, Defendants operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay the Plaintiff and Class members at one-and-one-half times the minimum wage for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA even though Plaintiff and the FLSA Collective Plaintiffs have been and are entitled to overtime.

55.     Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, seeks damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**THIRD CLAIM FOR RELIEF**
**New York State Minimum Wage Act, New York Labor Law § 650 *et seq.***
**Brought by Plaintiff on Behalf of Himself and the Class**
**Members Against the Defendants**

56. Plaintiff, on behalf of himself and members of the Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

57. Defendants knowingly paid the Plaintiff and members of the Class less than the New York minimum wage as set forth in N.Y. Lab. Law § 652 and supporting regulations of the New York State Department of Labor.

58. Defendants did not pay Plaintiff and members of the Class minimum wage for all hours worked.

59. Defendants' failure to pay Plaintiff and members of the Class the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

60. As a result of Defendants' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

**FOURTH CLAIM FOR RELIEF**
New York Overtime Violations
New York Minimum Wage Act, N.Y. Stat. § 650 *et seq.*,
N.Y. Comp. Codes R. & Regs. Tit. 12, §§ 137-1.3 (2010), 146-1.4 (2011)
**Brought by Plaintiff on Behalf of Himself and the Class
Members against the Defendants**

61. Plaintiff, on behalf of himself and members of the Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

62. It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any workweek.

14

63. Throughout the Class period, Defendants willfully, regularly and repeatedly failed to pay Plaintiff and the Class members at the required overtime rate of one-and-one-half times the minimum wage for hours worked in excess of forty (40) hours per workweek.

64. As a result of Defendants' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

**FIFTH CLAIM FOR RELIEF**
**New York Spread of Hours Violations**
**New York Minimum Wage Act, N.Y. Stat. § 650 et seq.,**
**N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-1.6 (2016)**
**Brought by Plaintiff on Behalf of Himself and the Class**
**Members against the Defendants**

65. Plaintiff, on behalf of himself and the members of the Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

66. Through the relevant period, Plaintiff and Class members regularly worked double shifts that spanned over ten hours in a day.

67. Defendants did not keep records of all of Plaintiff's and Class members' hours and did not pay them the required "spread of hours" compensation when required by New York Labor Law.

68. As a result of Defendants' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

**SIXTH CLAIM FOR RELIEF**
**New York Notice Requirements, N.Y. Lab. L. §§ 195, 198**
**Brought by Plaintiff on Behalf of Himself and the Class**
**members against the Defendants**

15

69. Plaintiff, on behalf of himself and the members of the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

70. Defendants did not provide Plaintiff and the members of the Class with the notices/wage statements required by N.Y. Lab. Law § 195.

71. As a result of Defendants' unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages pursuant to N.Y. Lab. Law § 198, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees, as provided by N.Y. Lab. Law § 198.

## SEVENTH CLAIM FOR RELIEF
### (NYSHRL-N.Y. Exec. Law § 296(7) – Age Discrimination)
**Brought by Plaintiff on Behalf of Himself against the Defendants**

72. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

73. In violation of NYSHRL, Defendants intentionally discriminated against Plaintiff on the basis of his ethnicity, religion, sex and age.

74. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

75. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

76. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for economic loss, emotional distress, physical

injuries, and medical treatment, and such other legal and equitable relief as this Court deems just and proper.

## EIGHTH CLAIM FOR RELIEF
**(NYCHRL- N.Y. Admin. Code §§ 8-101 *et seq.*)**
**Brought by Plaintiff on Behalf of Himself against all Defendants**

77. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

78. In violation of NYCHRL, Defendants intentionally discriminated against and/or aided and abetted discrimination against Plaintiff on the basis of his ethnicity, religion, sex and age.

79. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

80. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

81. Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected rights.

82. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for economic loss, emotional distress, physical injuries, and medical treatment; punitive damages; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

83. The New York City Commission on Human Rights will be notified and sent a copy of this complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs and members of the Class, pray for relief as follows:

A. An award of damages, according to proof, including back pay, front pay, punitive damages, and liquidated damages, to be paid by Defendants;

B. Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

C. Designation of Plaintiff as the Representative of the FLSA Collective Plaintiffs;

D. Designation of this action as a class action pursuant to F.R.C.P. 23;

E. Designation of Plaintiff as the Representatives of the Class;

F. An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

G. An award of damages, according to proof, including, back pay, front pay, compensatory damages, emotional distress damages, punitive damages, and liquidated damages, to be paid by Defendants;

H. Penalties available under applicable laws;

I. Costs of action incurred herein, including expert fees;

J. Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663, and other applicable statutes;

K. Pre-judgment and post-judgment interest, as provided by law; and

L. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated: New York, New York
       January 28, 2019

Respectfully submitted,

JOSEPH & KIRSCHENBAUM LLP

By: */s/ D. Maimon Kirschenbaum*
D. Maimon Kirschenbaum
32 Broadway, Suite 601
New York, NY 10004
Tel: (212) 688-5640
Fax: (212) 688-2548

*Attorneys for Named Plaintiff, proposed FLSA Collective Plaintiffs, and proposed Class*

19